*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HEATHER MARIE FERGUSON,

      Plaintiff-Appellant,

v

CHRISTOPHER JOHN APOLINAR,

      Defendant-Appellee.

UNPUBLISHED
July 14, 2026
10:51 AM

No. 377126
Eaton Circuit Court
LC No. 19-000978-DM

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Plaintiff, Heather Marie Ferguson, appeals by right the trial court's order granting primary physical and sole legal custody of the parties' three children to defendant, Christopher John Apolinar, and granting defendant's motion to change school districts. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND AND FACTS

The parties divorced in 2020 and share three children. Under the Judgment of Divorce, plaintiff was awarded sole physical custody and the parties shared legal custody. In April 2022, the court entered a stipulated order changing the children's school district from Mason School District to Charlotte School District, with defendant exercising parenting time every other weekend, with the parties exercising week-on/week-off parenting time during the summer and alternating holiday parenting time, and with the parties communicating only through the messaging application "Our Family Wizard." The court also ordered that plaintiff and the children discontinue contact with plaintiff's romantic partner at the time, Gregory Burton, who has an extensive criminal history; the court stated that, if contact with the minor children occurred, the court would consider changing the children's custody at an emergency show-cause hearing.

About a year later, the Friend of the Court (FOC) initiated a motion and order to show cause against both parties regarding joint legal custody, parenting exchanges, and Our Family Wizard. At the FOC hearing, defendant presented evidence that Burton was in a vehicle with plaintiff during a parenting exchange. Defendant also presented evidence that, two days after a referee hearing regarding that incident, Burton was in the driver's seat of plaintiff's truck.

Defendant orally requested a change of custody. The referee recommended finding that plaintiff violated the court order but denying defendant's motion. Defendant objected to the recommendation and, in an emergency motion, asserted that he had learned that plaintiff had moved into a different school district and unilaterally changed the children's school district. After holding a de novo hearing regarding defendant's motions, the trial court found that the repeated contacts between plaintiff and Burton and plaintiff's unilateral change of schools constituted a proper cause or change of circumstance to warrant revisiting the children's custody. It also found plaintiff in contempt for changing the children's schools. The court then referred the case to the FOC for an investigation.

Following the investigation, the FOC recommended that defendant be granted primary physical custody, that the children attend school in Cedar Springs, and that the parties continue to share joint legal custody. Plaintiff objected, and the court held an evidentiary hearing lasting several days. After the hearing, the court found that the children had an established custodial environment with plaintiff but that clear and convincing evidence supported that it was in the children's best interests to change their custody. The court also found that clear and convincing evidence supported ordering the children's school district changed to Cedar Springs. The trial court's ruling effectively flipped the parenting time schedule, with plaintiff receiving parenting time every other weekend. This appeal followed.

## II. STANDARDS OF REVIEW

This Court must affirm a trial court's custody determinations unless its factual findings were against the great weight of the evidence, it palpably abused its discretion, or it made a clear legal error on a major issue. MCL 722.28. This Court reviews whether the trial court's finding that a party has demonstrated a proper cause or change of circumstances is against the great weight of the evidence. *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022). The trial court's factual findings are against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024). In the child-custody context, the trial court abuses its discretion when the result so palpably violates fact and logic that it is evidence of passion or bias rather than the exercise of reason. *Id*. The court commits a clear legal error when it "incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). Additionally, this Court reviews de novo issues of law, including the application of the rules of evidence. *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023). Under de novo review, this Court reviews legal issues without deference to the lower court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

## III. ANALYSIS

### A. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES

Plaintiff first contends that the trial court erred in its determination that there was proper cause or change of circumstances to change custody. We disagree.

A trial court may modify a custody order only if the moving party first establishes that a proper cause or a change of circumstances warrants the modification. *Brown v Brown*, 332 Mich App 1, 9; 955 NW2d 515 (2020). To modify a child's custody, the proper cause or change of

circumstances "should be relevant to at least one of the twelve statutory best-interest factors, and must be of such magnitude to have a significant effect on the child's well-being." *Id*. (quotation marks and citation omitted).

First, plaintiff argues that the trial court erred by referring the matter to the FOC because the court relied on a triggering provision in the April 2022 custody order rather than independently determining whether a proper cause or change of circumstances warranted revisiting custody. Plaintiff's argument lacks merit. Although plaintiff is correct that the trial court is obligated to make the threshold finding of proper cause or change of circumstances in order to change custody, *Vodvarka v Grasmeyer*, 259 Mich App 499, 512; 675 NW2d 847 (2003), the record does not support her argument that no such finding was made here. An appellant must support their argument for relief with record evidence that verifies the argument's basis. *Kilian v TCF Nat'l Bank*, 343 Mich App 621, 638; 997 NW2d 745 (2022).

In this case, the trial court's April 2022 order provided that, if plaintiff violated the no-contact order with Burton, "the Court will *consider* a change of custody." (Emphasis added.) At a de novo hearing, the trial court indicated that it was deciding whether a proper cause or change of circumstances warranted revisiting custody. The court then found that a proper cause or change of circumstances existed. Specifically, it found that the repeated contacts between plaintiff and Burton, as well as plaintiff's act of unilaterally enrolling the children in a different school without consulting defendant, caused the court enough concern to refer the matter to the FOC for investigation. Thus, plaintiff is not entitled to relief because the record does not support her assertion that the court impermissibly relied on the April 2022 order to automatically trigger a custody determination. See *Kilian*, 343 Mich App at 638.

Plaintiff also briefly argues that the court erred because defendant failed to make a written request to change the children's custody. "When a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Traverse City Record-Eagle v Traverse City Area Pub Sch Bd of Ed*, 337 Mich App 281, 296; 975 NW2d 104 (2021) (quotation marks and citation omitted). In this case, defendant orally requested a change of custody, and plaintiff has not provided any authority for her argument that a written request is required. Plaintiff has thus abandoned this issue by failing to support it.

Next, plaintiff argues that no proper cause warranted revisiting the children's custody because the mere fact that she violated the court's order cannot establish proper cause to change custody. Upon reviewing the record, we conclude that plaintiff's characterization of the trial court's findings is inaccurate, and we disagree that the trial court's determination was against the great weight of the evidence.

For a request to change custody, "a proper cause or change in circumstance is a significant circumstance regarding one or more of the best-interest factors that has the potential for a significant effect on the well-being of the child or children whose custody is at issue." *Merecki v Merecki*, 336 Mich App 639, 646; 971 NW2d 659 (2021). Normal life changes, whether positive or negative, are not sufficient to warrant such a change. *Id*. There must be evidence that changes are material and impact the children, or almost certainly will impact them. *Id*. Further, the proper cause or change of circumstances should relate to at least one of the statutory best-interest factors.

*Brown*, 332 Mich App at 9. Under the Child Custody Act of 1970, MCL 722.21 *et seq*., the best-interest factors are as follows:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

In this case, the court found that a proper cause or change of circumstances existed since the last custody order was entered in April 2022 not only because of the repeated contacts between plaintiff and Burton in violation of that order, but also because plaintiff unilaterally enrolled the children in a different school district.

-4-

When making a custody decision, the court must consider "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b). The course of a child's education is a topic that can significantly affect a child's well-being. *Dailey v Kloenhamer*, 291 Mich App 660, 666; 811 NW2d 501 (2011). Indeed, several of the best-interest factors directly reference educational choices, including factors (b) ("[t]he capacity and disposition of the parties involved . . . to continue the education and raising of the child") and (h) ("[t]he home, school, and community record of the child"). And "[p]arents with joint custody must agree concerning where their children will attend school." *Pierron v Pierron*, 282 Mich App 222, 246-247; 765 NW2d 345 (2009).

The April 2022 order required the children to be enrolled in Charlotte School District. At the August 2024 hearing on defendant's motion for contempt, plaintiff indicated that she had enrolled the children in Mason School District and that defendant had not agreed to it. Changing the children's schools, particularly without securing the other parent's consent, unquestionably had the potential to significantly affect the children's well-being. See *Dailey*, 291 Mich App at 666; *Pierron*, 282 Mich App at 246-247. Thus, we conclude that the evidence did not clearly preponderate against the trial court's finding that plaintiff's unilateral decision to enroll the children in a different school district was a proper cause to warrant revisiting the children's custody.[1]

## B. FOC REPORT

Plaintiff next contends that the trial court erred in its consideration of an FOC report at the evidentiary hearing.[2] We disagree.

An FOC report and recommendation prepared pursuant to a referral order under MCL 552.505(1)(g), as was the case here, may be considered by the court and is not subject to the rules of evidence. MRE 1101(b)(9). Although a trial court may consider the report "as an aid to understanding the issues to be resolved," its findings on the best-interest factors when determining custody "must be based upon competent evidence adduced at the hearing." *Duperon v Duperon*, 175 Mich App 77, 79; 437 NW2d 318 (1989). "Thus, while the FOC's report and recommendation may not form the basis for the trial court's findings, it may be used to establish a background and context for the proceedings." *Id.*

Plaintiff argues that the trial court erred by relying on extra-record factual information contained in the FOC report. But plaintiff does not specify what facts were improperly relied on

---

[1] Plaintiff also argues that the trial court erred by relying on plaintiff's continued violations of the 2022 court order that prohibited contact with Burton as a basis for finding proper cause or change in circumstances. We need not address this argument given that standing alone, plaintiff unilaterally changing the children's school district constitutes proper cause to change custody.

[2] Plaintiff initially argued that the trial court erred in its reliance on the report as one prepared in connection with an FOC "facilitative and information-gathering conference" under MCR 3.224(B)(3), but conceded in her reply brief that the report was prepared pursuant to a referral order under MCL 552.505(1)(g).

and thus does not provide a factual predicate for her argument. See *Kilian*, 343 Mich App at 638. Regardless, the trial court explicitly stated that it was not admitting the report as an exhibit, and plaintiff's counsel acknowledged that the report could be considered for background and context. The trial court also stated that it would make its own findings on all 12 best-interest factors. Indeed, the court's weighing of the best-interest factors and conclusion on legal custody differed from the FOC's recommendation. And although plaintiff argues that the trial court improperly instructed defendant's counsel to go through the report when cross-examining plaintiff, this is a mischaracterization of the record. Instead, the court simply acknowledged that the FOC report could be used as a guidepost to question plaintiff. Thus, the record does not support plaintiff's argument that the trial court improperly based its decision on the FOC's findings or conclusions. See *Duperon*, 175 Mich App at 79.

## C. THE CHILDREN'S BEST INTERESTS

Next, plaintiff contends that the trial court's determination that there was clear and convincing evidence to modify custody and change schools was against the great weight of the evidence. She primarily argues that the court erred in its best-interests analysis by considering her personal relationship with Burton and by failing to consider defendant's negative impact on other aspects of the children's lives. Overall, we conclude that plaintiff's arguments lack merit. The court did not misapply the law, its findings were not against the great weight of the evidence, and it made sufficient findings of fact.

The trial court must make its determination about a child's custody by considering the child's best interests. MCL 722.25(1). To determine what is in the child's best interests, the trial court must consider the sum total of the factors under MCL 722.23, which we have previously listed. When reviewing the court's findings regarding the children's best interests in a custody case, this Court considers that the trial court is "better situated to weigh evidence and assess credibility." *Sabatine*, 513 Mich at 285 (quotation marks and citation omitted). In addition, a trial court's factual findings and conclusions under the best-interest factors "need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre v MacIntyre*, 267 Mich App 429, 452; 705 NW2d 144 (2005). The trial court's decision regarding the weight of the best-interest factors is a matter of the court's discretion. *Kessler v Kessler*, 295 Mich App 54, 64; 811 NW2d 39 (2011).

We first recount the pertinent findings in the trial court's best-interest analysis. The court found that factor (b) (guidance and education) favored defendant. The court stated that it "has concerns about Plaintiff-mother providing guidance to the children because she has blatantly violates [sic] court orders." The court found that plaintiff had agreed to a no-contact order in 2022 between the children and Burton because of his criminal record and that there had been domestic violence between plaintiff and Burton in 2023. It found that the children were with Burton on a

cross-country road trip in 2023.[3] The court also observed that plaintiff continued to see Burton with the children present and that she was held in contempt as a result.

Additionally, the children attended Charlotte schools beginning in April 2022 at plaintiff's request, but plaintiff had "blatantly violated" the court order when she enrolled the children in Mason schools. After being ordered to reenroll the children in Charlotte schools, the court found that, instead of moving back into the home that she owned in Charlotte, plaintiff chose to continue living with her parents in Mason and was vague about who resided in the Charlotte home. As a result, the children had been removed from their friends and immediate school area and incurred numerous "tardies." The court found that plaintiff had allowed the oldest child to get a nose ring and reinstated her ADHD medication without consulting defendant, despite that the parties had joint legal custody. The court opined that children learned from what they saw and that plaintiff "demonstrated to the children that the law and agreements can be ignored."

The court found that factor (c) (material care) was equal between the parties, who were both employed and provided the children with medical and dental care. However, under factor (d) (stable environment), the court found that the children had primarily lived with plaintiff since 2019 but questioned whether the environment was stable and should be maintained. The court found that the children resided in Lansing with Burton for a year and then moved to Charlotte in 2020. Between 2020 and 2022, plaintiff had another boyfriend who stayed overnight, and the children interacted with his children. The court found that plaintiff dated another man off and on in 2022, although he did not spend the night when the children were present. In 2025, plaintiff began dating a man who had not met the children. Further, plaintiff continued to see Burton.

The court found that plaintiff moved into her parents' home in 2024 without notifying or consulting defendant. Plaintiff had moved from a home with four bedrooms and two bathrooms in the children's school district to the Mason home, which included seven adults, and plaintiff shared a room with the two younger children. The court found that, during this time, the oldest child had been in trouble for vaping and poor school attendance. The court also questioned plaintiff's judgment in supporting the oldest child to get her driving permit and a job when the child's grades and attendance were poor. The youngest child had issues with discipline on the bus, and there were concerns about bullying. Plaintiff proposed purchasing a home in Mason, which would constitute a fourth move for the children. The court found that the instability established that plaintiff placed her own needs before those of the children:

> While there was no evidence that the children have not been properly clothed or fed, the constant changes in their environment together [with] the [plaintiff]'s changing relationships and the number of people living in the home, when there is no reason why she could not stay in Charlotte, in the children's school district, leaves the Court with no other conclusion [than] that [plaintiff] places her own needs first.

---

[3] The trial court likely misspoke, as plaintiff testified that the trip occurred over spring break in 2024.

Regarding defendant, the court found that he had lived in Cedar Springs since 2020 with his now-wife. The home was stable and permanent, and the children had a good relationship with his wife. The court found that, at defendant's house, the children had a routine, family dinner, and chores, and participated in activities together.

The court found that factor (e) (permanence of existing/proposed homes) also favored defendant. Plaintiff's family unit was consistently changing, including dating several individuals and moving several times, with the children now being transported back and forth from Mason to Charlotte for school. In contrast, defendant had lived in the same home with his now-wife for five years.

Under factor (f) (moral fitness), the court found that this factor also favored defendant. It noted that defendant had been convicted of operating while intoxicated 13 years ago, but it found defendant's testimony that he did not have an alcohol problem to be credible. Regarding plaintiff, the significant issues were her relationship with Burton, her continuous violations of the court order, and her minimization of Burton's lengthy criminal history and the domestic violence between herself and Burton. The court found that plaintiff did not deny that she had been physically assaulted during the domestic violence incident but minimized the issue.

The court found that factor (h) (home, school, and community record) strongly favored defendant. It found that plaintiff had been the primary parent responsible for the children's school and extracurricular activities. The court reemphasized plaintiff's choices regarding moving to Mason and then shuffling the children back and forth to Charlotte instead of moving back into her home. The children had numerous tardies and absences, and they struggled in school. The children were not involved in extracurricular activities. The court indicated that this factor would not favor change if things were going well, but "the opposite is true." Rather, the children had been struggling for three years. The court found that the children's school history was not good and that their involvement in extracurricular activities was almost nonexistent.

Regarding factor (j) (relationship facilitation), the court found that the factor favored defendant. The court found that there was clear hostility and a lack of trust between the parties. However, after reviewing the Our Family Wizard communications, the court found that plaintiff's communication was critical and sarcastic, including when defendant was attempting to communicate information about the children that plaintiff had requested. The court found that plaintiff's opinion of defendant hindered her ability to foster a relationship with him. The court also found it significant that defendant described plaintiff as a good mother who simply had a different parenting style and that plaintiff had stated that she was not sure whether defendant loved the children.

Regarding factor (k) (domestic violence), the court found that the factor favored defendant. The court referenced the 2023 incident between plaintiff and Burton in which Burton pleaded to disorderly person or jostling and stated that it found that particularly concerning given that plaintiff allowed Burton around the children in violation of the court order.

The court also found that factor (l) (other factors) favored defendant. The court found that joint legal custody was not an option because the parties did not have the ability to communicate, make joint decisions, or agree on the children's best interests. The court also found that plaintiff

consistently placed her own needs above those of the children, including by disregarding the negative effects on the children of her moves, commuting, and contact with Burton.

As for the school change, the court found that relocating the children to Cedar Springs schools was best for the children, as it would give them an opportunity to develop a routine, a sense of community, and engagement in activities.

## 1. CONTACT WITH BURTON

In challenging the trial court's best-interest analysis, plaintiff first argues that the trial court erred by according disproportionate weight to her contact with Burton under best-interest factors (b), (f), (k), and (*l*). We disagree. The trial court did not err by determining that plaintiff's decision to maintain the relationship in violation of a court order reflected moral fitness (factor (f)) and on her ability to provide the children with guidance (factor (b)), that plaintiff's relationship with Burton involved domestic violence (factor (k)), and that plaintiff's conduct in this regard was another relevant factor in the custody determination (factor (*l*)). Nor did the trial court give disproportionate weight to plaintiff's relationship with Burton, as it considered other evidence relevant to these factors in making its ultimate determination.

Plaintiff testified that she and Burton dated in 2019 and then broke up in 2020, maintaining contact thereafter. As discussed, the 2022 stipulated court order prohibited contact between Burton and plaintiff and Burton and the children, stating that custody could be revisited if contact recurred. At the FOC hearing in May 2023, plaintiff did not deny that a video depicted her and Burton sitting in the same car at a parenting exchange. In May 2024, defendant observed Burton in plaintiff's truck. Accordingly, in August 2024, plaintiff was found in violation of the 2022 court order prohibiting contact with Burton. In addition, at the evidentiary hearing, plaintiff testified that Burton and the children went on a road trip together in March or April 2024 and that the last time the children saw him was in May 2024. Further, in August 2023, plaintiff testified that Burton was charged with domestic violence after an incident in the early morning outside her home in which she and Burton were yelling and arguing outside near his car. She testified that she accidentally fell backward as he got out of the car and that her hand was shut in the door. She denied that the children witnessed the incident and acknowledged that Burton pleaded to a lesser charge, stating that she told the prosecutor she did not want him charged.

The trial court found that plaintiff's violation of court orders, minimization of Burton's criminal history, and involvement in domestic violence affected her moral fitness under factor (f). A trial court should consider morally questionable conduct only as that conduct relates to a person's fitness as a parent. *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994). Such considerations may include "verbal abuse, drinking problems, driving record, physical or sexual abuse of children, and *other illegal or offensive behaviors*." *Id*. at 887 n 6 (emphasis added). The trial court considered that plaintiff admitted to violating a court order prohibiting contact between the children and Burton, which exposed the children to someone with an assaultive criminal history, including against plaintiff herself. Given that plaintiff's conduct bore on her ability to parent her children, the court properly considered it under factor (f) when deciding the children's best interests. Nor were the trial court's findings against the great weight of the evidence.

The trial court also found that plaintiff's blatant disregard of court orders affected her ability to provide the children with guidance under factor (b). The court opined that children learned more from what they saw than what parties said and found that plaintiff "has demonstrated to the children that the law and agreements can be ignored." The record supports that plaintiff's modeling of contempt for authority affected the children. The youngest child had disciplinary issues at school that included talking back to authority figures, swearing, and not following rules, while the oldest child got in trouble for vaping at school. We conclude that the record does not clearly preponderate against the trial court's finding that plaintiff's disregard of authority was affecting the children.

As for factor (k), the trial court did not err by weighing this factor against plaintiff. Domestic violence need not be directed at or witnessed by the children themselves. MCL 722.23(k). The record supports that plaintiff minimized the 2023 incident with Burton, who was charged with domestic violence and pleaded to a lesser charge, and continued to allow Burton around the children after the incident in violation of the 2022 order, including on a cross-country road trip.

Regarding factor (*l*), the trial court did not err by finding that this factor favored defendant. It reasoned in part that plaintiff consistently placed her own needs above those of the children, including by disregarding the negative effects that her contact with Burton had on them. The court also found in part that plaintiff placed her own needs above the needs of the children by moving out of the children's existing school district without a clear reason. Regarding plaintiff's moves and the children's schooling, plaintiff moved from a home that she owned in the children's existing school district to her parents' home in a different school district. She testified that she moved because she wanted the children to transfer to Mason schools, which they had attended before the divorce, and that she had been asking to change schools for as long as they had lived in Charlotte. The longest period of time that the children had attended a school district was their three-year period in Charlotte. The children had tardiness issues. The home in their existing school district had four bedrooms and two bathrooms; however, in plaintiff's proposed school district, plaintiff did not have a bedroom. At the time of the hearing, plaintiff inconsistently testified that either "kind of, nobody" lived in the home in their existing school district, that defendant's adult son lived in the home, that her cousins lived in the home, and that at times Burton stayed in the home. Plaintiff agreed that there was no reason that she could not move the children back to their existing school district. On this record, the evidence does not clearly preponderate against the trial court's finding that plaintiff placed her own needs and desires above the children's needs.

## 2. OTHER RELATIONSHIPS

Next, plaintiff argues that the trial court erred by considering her romantic partnerships with people who had not met the children under factors (d) (stable environment) and (e) (permanence of existing/proposed homes), and she asserts that its findings were not proportional. We do not agree that the court erred in its factual findings or assigned disproportionate weight to these relationships.

The trial court is required to consider the length of time a child has lived in a stable environment and the permanence of the family unit in the existing or proposed custodial home. MCL 722.23(d) and (e). The record established that after the parties' separation, plaintiff lived in

-10-

Lansing with Burton and the children from 2019 until about May 2020, purchased a home in Charlotte in 2020, and then moved to plaintiff's proposed school district in Mason to live with her parents in June 2024. Plaintiff did not seek defendant's consent for the school district change, and after she was ordered to reenroll the children in Charlotte schools, the family continued to reside in Mason with the children being shuffled back and forth. The home in Mason included plaintiff's mother and father, plaintiff's two siblings, two other relatives, plaintiff, and the children. Plaintiff proposed a fourth move to a new home in Mason. During this period, plaintiff also had a romantic relationship with a man who met the children and two men who did not meet the children. The children also struggled in school with behavioral and attendance issues.

We acknowledge that plaintiff's relationships with people who had not met the children are entitled to little weight. See *Fletcher*, 447 Mich at 886 (observing that there was no reason to rely on the defendant's affairs as setting a poor moral example when the children had no knowledge of said affairs). But the record does not reflect that the court faulted plaintiff for the relationships themselves or assigned them disproportionate weight. Under factor (d), the court observed that the children's environment with plaintiff was subject to constant change because of moves, the number of people living in the home, and plaintiff's changing relationships. Similarly, under factor (e), the court found that plaintiff's family unit was constantly changing because she had dated several individuals, moved several times, and the children were commuting to school. Accordingly, the trial court considered many facts beyond plaintiff's personal relationships when weighing these factors. The record supports the trial court's findings, which are not against the great weight of the evidence.

### 3. VIOLATIONS OF THE COURT ORDER

Plaintiff also argues that the trial court erred by changing custody in order to punish her for violating a court order rather than because there was clear and convincing evidence that changing custody was in the children's best interests. We disagree.

As a general matter, violating orders cannot by itself form a proper basis for changing custody. See *Maier v Maier*, 311 Mich App 218, 227; 874 NW2d 725 (2015) (concerning a failure to obtain a psychological evaluation), citing *Adams v Adams*, 100 Mich App 1, 13; 298 NW2d 871 (1980) (concerning parenting time violations). However, custody cases are decided on a case-by-case basis in light of the specific facts of the case. *Vodvarka*, 259 Mich App at 512. In this case, the nature of plaintiff's violation of the court order exposed the children to a person with a history of criminality, including battery, who had perpetrated a violent act against plaintiff in 2023. Plaintiff's behavior is not similar to a technical parenting-time violation or psychological-evaluation dispute. Under the facts of this case, violating the court order had the potential to directly affect the children's safety and well-being.

Reviewing the trial court's best-interest findings as a whole, we conclude that the trial court centered the children's interests and did not act out of spite for plaintiff's violations of a court order. Considering the extensive testimony about the instability of the children's schooling and the children's struggles in school, the court's discretionary custody decision did not so palpably violate fact and logic that it demonstrated that the court was biased or unreasonable. See *Sabatine*, 513 Mich at 284.

### 4.  THERAPY, SPECIAL-EDUCATION SERVICES, SCHOOL STRUGGLES, AND EXTRACURRICULAR ACTIVITIES

Plaintiff further argues that the trial court erred by failing to consider that defendant obstructed the oldest child's therapy and was opposed to special-education services for the middle child under factor (b), concerning guidance and education, and factor (c), concerning a parent's disposition to provide for a child's material and medical needs.  Plaintiff also quarrels with the trial court not faulting defendant for the children's struggles in school and failure to participate in extracurricular activities.  Again, we conclude that the court did not err nor were its findings against the great weight of the evidence.

Under factor (c), a court may consider a parent's decision to discontinue a child's therapy sessions.  See *MacIntyre*, 267 Mich App at 455.  However, when considering the best-interest factors, the trial court is not required to comment on each piece of evidence.  *Kessler*, 295 Mich App at 65.  In this case, the court did not comment on therapy when rendering its decision.  However, considering that the record showed that any counseling that defendant obstructed occurred in 2022, that he consented to counseling for all three children in 2023, and that the oldest child no longer needed counseling, we conclude that the court was not required to comment on this evidence.

Regarding the middle child's educational needs, plaintiff testified that defendant refused to let the child be evaluated for special-education services.  Defendant testified that he had attended a meeting at which he, plaintiff, and school officials discussed the middle child and talked about special needs.  According to defendant, he had been opposed to giving the middle child a label and had asked whether other measures could be taken.  Defendant was told that the middle child could attend a supplemental, reading-focused program, and defendant wanted to try something like that before the middle child was given a special-needs label.  Defendant testified that he worked with the middle child on reading, and plaintiff testified that the middle child was receiving extra reading time at school.  At the evidentiary hearing, defendant testified that he would agree with the middle child's being evaluated for special-education services by defendant's proposed school district or the existing school district.  Considering that defendant had acknowledged that the middle child struggled with reading, was trying to address the issue, and would agree with an evaluation, we are not convinced that the court erred by crediting defendant's testimony and failing to find that defendant had obstructed the middle child's educational needs.

Plaintiff also argues that the trial court erred by failing to consider defendant's responsibility as to the children's struggles in school before plaintiff moved to her proposed school district.  But the court found that the children primarily resided with plaintiff during the school year and that the children had been struggling for three years.  Given these findings and that the children were commuting twenty minutes each way to school and had numerous tardies and absences, the trial court did not err by weighing the children's educational struggles against plaintiff.

Lastly, plaintiff argues that the trial court erred by faulting her for the children's lack of enrollment in extracurricular activities.  The court found that plaintiff had been the primary parent responsible for the children's school and extracurricular activities and that the children were not involved in extracurricular activities.  The evidence did not clearly preponderate against these

findings, which ultimately came down to which party the court found more credible. Plaintiff testified that defendant would not allow participation and did not provide transportation. In contrast, defendant testified that he never had been told that the children wanted to participate in a sport or activity in the last three years. He denied preventing the children from participating in extracurricular activities, and he testified that they could play sports in defendant's proposed school district. Which party was responsible for the children's lack of involvement in extracurricular activities presented a pure credibility contest, and the trial court's finding that plaintiff was responsible was not against the great weight of the evidence. See *Sabatine*, 513 Mich at 285.

## IV. CONCLUSION

The trial court did not err in finding that there was proper cause or change in circumstances to revisit custody; we reject plaintiff's challenge to the trial court's consideration of the FOC report; and plaintiff's challenges to the trial court's weighing of the best-interest factors lack merit. Accordingly, we affirm the order of the trial court awarding primary physical custody and legal custody to defendant and changing the children's school district.

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin